# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==============
## NO. 03-01-00318-CV
==============

**Reagan National Advertising, Appellant**

**v.**

**Vanderhoof Family Trust and Acme Partnership, L.P., Appellees**

=========================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. GN101346, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING
=========================================================================

In this accelerated, interlocutory appeal, appellant Reagan National Advertising ("Reagan") seeks the reversal of a temporary injunction order that prohibits Reagan from "filing any permit application with the Texas Department of Transportation for a billboard permit on the west side of IH-35 within 1500 feet of 2801 and 2803 Cole Street, Austin, Travis County, Texas." *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2002); Tex. R. App. P. 28.1. We hold that the stated purpose of the temporary injunction has been satisfied, and the temporary injunction has therefore become moot. Accordingly, we will dissolve the temporary injunction order and dismiss the appeal.

## BACKGROUND

Reagan is in the business of outdoor advertising and has obtained permits for and erected a number of billboards in Austin. In order to erect a sign in Austin, an entity must comply

with all the City of Austin (the "City") regulations, and if the proposed sign is along a regulated highway,[1] the entity must also comply with regulations issued by the Texas Department of Transportation (the "Department"). *See* 43 Tex. Admin. Code § 21.146 (2001). The Department regulations, for example, provide that issued permits must be renewed annually and that signs may not be erected within 1,500 feet of each other on the same side of a regulated highway. *Id.* §§ 21.146, 21.150(d), 21.153(d) (2001).

The City's ordinances prohibit off-premises billboards altogether.[2] Austin, Tex., Code of Ordinances § 25-10-102(1) (2001). However, billboard sites that were lawfully installed prior to the adoption of the prohibiting ordinances are excepted from the prohibition. *See id.* § 25-10-102. Replacement of these "nonconforming" billboards[3] is allowed under limited circumstances. First, a City permit for the replacement sign must be issued before the existing sign is removed. *Id.* § 25-10-152(D)(1) (2001). Second, the replacement sign must reduce the existing sign by at least twenty-five percent. *Id.* § 25-10-152(B)(5)(a). And third, the replacement sign must be completed within ninety days of the removal of the existing sign. *Id.* § 25-10-152(D)(2). If the replacement sign is not

---

[1] A regulated highway is a highway on the interstate highway system. 43 Tex. Admin. Code. § 21.142(23) (2001).

[2] An off-premise sign is "a sign advertising a business, person, activity, goods, products, or services not located on the site where the sign is installed, or that directs persons to any location not on that site." Austin, Tex., Code of Ordinances § 25-10-3(7) (2001).

[3] A nonconforming billboard is a sign "that was lawfully installed at its current location but does not comply with the requirements of this chapter." Austin, Tex., Code of Ordinances § 25-10-3(6) (2001).

erected within ninety days of the removal of the existing sign, the "grandfathered" status of the billboard site may be forfeited.

**The Controversy**

Appellee Vanderhoof Family Trust ("Vanderhoof") owns real property located at 2801 and 2803 Cole Street in Austin, which includes a nonconforming billboard site. This property is located along IH-35, a regulated highway. Reagan leased the property from Vanderhoof for the purpose of maintaining a sign. Accordingly, Reagan obtained permits from both the City and the Department. The lease was scheduled to expire by its own terms on April 30, 2001. Reagan's permit from the Department, however, was not scheduled to expire until June 1, 2001.

Prior to the expiration of Reagan's lease, Vanderhoof commenced negotiations with Acme Partnership, L.P. ("Acme"), one of Reagan's competitors. Once Vanderhoof and Acme reached an agreement regarding the replacement of the billboard on the property, Acme applied for and ultimately obtained a permit from the City.[4] But Acme would have to wait until Reagan either

---

[4] According to testimony at the temporary injunction hearing, on April 25, the day that Vanderhoof communicated to Reagan its intent to contract with Acme, Reagan engaged in a course of conduct to either retain its permit or block Acme's attempt to obtain a permit. For example, Reagan filed a repair permit application with the City. The stated purpose of the permit application was to repair the sign on Vanderhoof's property and "general inspection for sign maintenance." Reagan's representative, David Depmore, signed the permit application, and by doing so, represented that "the property owner [Vanderhoof] is aware of the application for a sign permit and that all of the above information is true and correct." However, Depmore later admitted during the hearing that Vanderhoof was not aware of Reagan's application for a repair permit. The City ultimately denied Reagan's application. Testimony at the temporary injunction hearing also revealed that on April 25, once Reagan learned of Vanderhoof's intent to contract with Acme, Reagan commenced preparations to remove its sign, even though the lease would not expire for several days. Reagan was aware that the City would not grant Acme's permit application if the sign had been removed before a new permit was issued. *See* Austin, Tex., Code of Ordinances § 25-10-152(D)(1) (2001).

3

voluntarily relinquished its Department permit or until the permit expired before Acme could apply for a Department permit of its own.

Suspecting that Reagan would attempt to prevent Acme from obtaining a Department permit, Vanderhoof and Acme sued Reagan, alleging tortious interference with contract and tortious interference with prospective business relations and sought a temporary restraining order and temporary injunction. According to their petition, Vanderhoof and Acme believed that Reagan would file an application for a new permit with the Department for another location within 1500 feet of Vanderhoof's property, preventing Acme from erecting a replacement billboard on the property if Reagan were granted the permit. They also contended that even if Reagan were granted a Department permit, it would be unable to erect a new billboard since the City prohibits the construction of new billboards, and no billboard currently exists within 1500 feet of Vanderhoof's property. Thus, Vanderhoof and Acme suspected that Reagan was preparing to file a permit application with the Department for the sole purpose of subverting any prospective contracts or business relations Vanderhoof might be negotiating for its existing billboard site.

These suspicions were borne out at the hearing on the temporary injunction. At the hearing, evidence was presented revealing that David Depmore and Billy Reagan, two Reagan representatives, had approached St. David's Hospital and sought the hospital's consent to sign a billboard permit application to be submitted to the Department. The hospital is located within 1500 feet of Vanderhoof's property, but it does not include a nonconforming billboard site. Thus, if the Department granted a permit for the erection of a billboard on the hospital's premises, Acme would be prohibited from obtaining a Department permit for the billboard site on Vanderhoof's property

4

because a permit would already exist for a site within 1500 feet of the property.[5] Even with the Department permit, however, neither Reagan nor the hospital would be able to utilize the permit and erect a billboard because the City prohibits the construction of new billboards. Vanderhoof argued to the trial court that Reagan's sole purpose in seeking a permit from the Department was to prevent Vanderhoof from negotiating a new lease with Acme.

The trial court granted the temporary restraining order and later issued a temporary injunction order. The order provides, in pertinent part:

> Reagan National Advertising, its officers, agents, servants, employees, and attorneys, and those persons in active concert with them who receive actual notice of this order, are prohibited from and are hereby commanded forthwith to desist and refrain from filing any permit application with the Texas Department of Transportation for a billboard permit on the west side of IH-35 within 1500 feet of 2801 and 2803 Cole Street, Austin, Travis County, Texas.

Reagan appeals from this order.

## DISCUSSION

Reagan argues that the trial court abused its discretion in granting Vanderhoof's application for a temporary injunction because (1) the trial court lacked jurisdiction to consider the application since no justiciable controversy existed; (2) Vanderhoof failed to establish the elements necessary for injunctive relief; (3) Reagan has a legal right to perform the enjoined action and therefore any resulting interference with contract or prospective business relations is justified; and (4)

---

[5] Jeff Hardwick, the director of facilities management at St. David's Hospital, testified that when Depmore approached the hospital to obtain permission to apply for a permit, Depmore indicated that Reagan had no intention of actually placing a billboard on the hospital's property.

the granting of the temporary injunction accomplished the object of the suit and has deprived Reagan of a right to trial.

In an appeal from an order granting a temporary injunction, our review is confined to the validity of that order. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Universal Health Servs. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.). The decision to grant or deny the temporary injunction lies within the sound discretion of the trial court; we will not disturb that decision absent a clear abuse of discretion. *Thompson*, 24 S.W.3d at 576. This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *Id.* Rather, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *Id.* An abuse of discretion exists when the court misapplies the law to established facts or when it concludes that the applicant has demonstrated a probable injury or a probable right to recovery and the conclusion is not reasonably supported by evidence. *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551 (Tex. App.—Dallas 1993, no writ). The burden of proof is on the litigants attacking the trial court's judgment. *Garcia-Marroquin v. Nueces County Bail Bond Bd.*, 1 S.W.3d 366, 379 (Tex. App.—Corpus Christi 1999, no pet.).

The trial court in this case based its order granting the temporary injunction on two alternative grounds. *See* Tex. R. Civ. P. 683 ("Every order granting an injunction . . . shall set forth the reasons for its issuance . . . ."). First, the trial court found that Vanderhoof and Acme had established a probable right to recovery, irreparable harm in the interim, and no adequate remedy at law, thus satisfying the necessary prerequisites for a traditional temporary injunction. *See Thompson*,

24 S.W.3d at 577. Second, the trial court based its decision to grant the injunction on section 65.011 of the Texas Civil Practice and Remedies Code, concluding that "because this case involves the permanent loss of property and the injunctive relief is authorized by statute, the statute controls and the equitable principles of 'adequate remedy at law' and 'irreparable harm' have no application." *See* Tex. Civ. Prac. & Rem. Code Ann. § 65.011(5) (West 1997).

In explaining the irreparable harm that Vanderhoof faced, the trial court reasoned in its order that "it is probable that the valuable grandfathered rights in the billboard site will be lost forever, causing irreparable harm."[6] The court also explained that Vanderhoof had no adequate remedy at law "because if Reagan National obtains a TxDOT permit, this will prevent a TxDOT permit being issued for the grandfathered Vanderhoof site, which will probably prevent the replacement billboard from being erected."

The language used by the trial court in its order in support of the issuance of the temporary injunction suggests that this injunction was necessary only for a narrow window of time.[7] In other words, the trial court was concerned with restraining Reagan from applying for a permit with the Department while Acme was attempting to obtain a Department permit because if Reagan had filed its Department permit application first, the Department would likely have granted Reagan a preference over Acme. 43 Tex. Admin. Code § 21.150(c) ("Permits will be considered on a first-come, first-serve basis.") (2001). Yet, the permit could not have been used because Reagan would

---

[6] If Acme were prevented from obtaining a permit from the Department, it could not replace the billboard on Vanderhoof's property. The billboard must be replaced within ninety days following the issuance of the City permit or the grandfathered rights in the billboard site would be lost.

[7] Both parties conceded at oral argument that the original trial setting for this cause has been continued, and that presently no trial setting has been obtained.

have been unable to obtain a City permit.[8]  Nevertheless, Acme would have been prevented from obtaining a Department permit of its own, and would have been unable to replace the billboard on Vanderhoof's site without the Department permit.  The failure of Acme to obtain a Department permit and the consequent inability of Acme and Vanderhoof to execute a contract to replace the billboard on Vanderhoof's property could have resulted in Vanderhoof losing its "grandfathered" property rights altogether pursuant to the City's ordinances.

Since the injunction was issued, however, Acme has applied for and received both the City permit and the Department permit and has entered into a contract with Vanderhoof.[9]  Currently, Vanderhoof is no longer in danger of losing its valuable grandfathered property rights.  Therefore, any harm the injunction was intended to prevent has now been averted.  Additionally, any threat of a permanent loss of property—*i.e.*, Vanderhoof's grandfathered property rights—that served as a basis for the injunction under section 65.011 of the civil practice and remedies code is also no longer an issue.  Thus, the objective of the injunction has been accomplished.  Accordingly, the temporary injunction has become moot and we dissolve it.  Because we dissolve the temporary injunction, resolution of Reagan's remaining issues on appeal is unnecessary.  *See* Tex. R. App. P. 47.1 (opinion to be as brief as practicable to decide issues necessary to final disposition).

---

[8]  Reagan argued to the trial court that it might seek a variance from the City in order to obtain a City permit and erect a new billboard on St. David's property.

[9]  Both parties acknowledged these facts during oral argument.

## CONCLUSION

Having determined that the temporary injunction issued by the trial court has fulfilled its purpose, we dissolve the temporary injunction and dismiss the appeal.

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Dismissed

Filed:   February 22, 2002

Publish

9