# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00013-CV

**Robert Pewitt, Appellant**

**v.**

**Genna Terry, as President of Smith Cemetery Association, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 37068, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Robert Pewitt brings this interlocutory appeal from the district court's order temporarily enjoining him from preventing members of the Smith Cemetery Association from using a private road running across Pewitt's ranch for the purpose of accessing a private cemetery located on an adjoining ranch. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2012). We will reverse the trial court's order granting temporary injunctive relief, dissolve the temporary injunction, and remand the cause to the trial court for further proceedings.

## BACKGROUND

In February 2005, Pewitt purchased a ranch located on FM 963 in Burnet County. The Pewitt Ranch shares its westernmost property line with another ranch located on FM 963, owned by Matthew and Beth Moten. The Smith Cemetery, a private active cemetery, is located on—and surrounded entirely by—the Moten Ranch. The Smith Cemetery Association ("the Association")

is a nonprofit organization that maintains and operates the Smith Cemetery. Its members have historically accessed the cemetery using a road that turns off of FM 963 onto the Pewitt Ranch, travels through the middle of the ranch to a gate in the ranch's westernmost fence line, and continues across the Moten Ranch to the cemetery ("the Pewitt Ranch Road").

After purchasing the ranch, Pewitt installed a high game fence and began raising cattle, axis deer, and whitetail deer. After several occasions when his entrance gate on FM 963 was left open by people using the Pewitt Ranch Road, Pewitt began locking the gates after sunset.[1] Pewitt testified that thereafter he received a harassing and threatening phone call, a similarly harassing and threatening note was left on his gate, people started leaving trash at his front gate, and a trophy whitetail buck was shot and left lying beside the Pewitt Ranch Road. Pewitt then began keeping his ranch gate locked at all times. Thereafter, the Association sued Pewitt, alleging that he was interfering with its members' use of an access easement to the Smith Cemetery. In its third amended petition, the Association alleged that it has an express easement over the Pewitt Ranch Road or, in the alternative, an easement by implication, necessity, or estoppel.

In March 2011, Pewitt offered to permit the Association to access the Smith Cemetery through the Pewitt Ranch Road for funerals and, from 9:00 a.m. to 5:00 p.m. one day per month, for visitation and maintenance. The Association did not accept this offer and proceeded to seek a temporary injunction granting them unrestricted use of the road for access to the cemetery.

---

[1] Pewitt did not state that the gates were being left open by members of the Association visiting the cemetery. Rather, he recounted that he frequently saw cars speeding down the road, and in one instance a teenager was sitting on the hood of a speeding car and screaming. Pewitt also testified that people, presumably associated with the Moten Ranch, were "working cattle, [] hauling hay, and doing their cattle business on my ranch."

2

After conducting an evidentiary hearing on the Association's application for a temporary injunction, the trial court signed an order that enjoined Pewitt from interfering with the Association's alleged easement and permitted the Association members to access the cemetery using the Pewitt Ranch Road on certain specified holidays and on Wednesdays and Saturdays from 9:00 a.m. until 1:00 p.m. The order recites the court's findings that the Association had a "<u>probable right of recovery</u> for one or more of the pleaded theories of easement," that the access allowed by Pewitt was inadequate and unreasonably restrictive, and that without the access provided in the order granting the temporary injunction, the Association and its members would suffer irreparable harm, including harm from not having an opportunity to pay respects to deceased loved ones on holidays and on personal special days. Pewitt perfected this appeal.

## STANDARD OF REVIEW

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling v. Metcalf*, 863 S.W.2d 56, 57 (Tex. 1993). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The status quo is "the last actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (quoting *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (1962) (per curiam)). To obtain a temporary injunction the applicant must ordinarily plead and prove three specific elements: (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204. The applicant is not required to establish that he will prevail on final trial; rather, the only

3

question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits. *Walling*, 863 S.W.2d at 58.

Our review is confined to the validity of the order that grants or denies injunctive relief. *Id.* The decision to grant or deny a temporary injunction lies in the discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of that discretion. *Id.* This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *Id.* We may not reverse a trial court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision. *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 105 (Tex. App.—Austin 2003, no pet.) (citing *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.)). Rather, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *Id.* We will reverse the order if the trial court misapplies the law to established facts or if it concludes that the applicant has demonstrated a probable injury or a probable right to recover and such conclusion is not reasonably supported by the evidence. *Brammer*, 114 S.W.3d at 106 (citing *Reagan Nat'l Adver. v. Vanderhoof Family Trust*, 82 S.W.3d 366, 370 (Tex. App.—Austin 2002, no pet.)).

**DISCUSSION**

We first consider Pewitt's argument that the Association did not establish that it has a probable right to the relief sought in its third amended petition. In its petition, the Association sought damages for Pewitt's alleged interference with its use of an easement over Pewitt's ranch to

4

access the Smith Cemetery and sought a declaration that it had a valid easement over the Pewitt Ranch Road. To succeed on either of these claims, the Association must demonstrate that the claimed easement over the Pewitt Ranch Road exists. In its order granting the temporary injunction, the trial court found that the Association had a probable right to prevail on "one or more" of the pleaded theories of easement alleged in its petition. Informed by the standard of review for reviewing an order granting a temporary injunction, we will consider whether this conclusion is reasonably supported by the evidence presented at the hearing on the Association's application for a temporary injunction. *See id.*

### *Express Easement*

In its brief, the Association all but concedes that it does not have an express easement across the Pewitt Ranch. An express easement is an interest in land and is therefore subject to the Statute of Frauds. *Anderson v. Tall Timbers Corp.*, 378 S.W.2d 16, 24 (Tex. 1964). It must, at a minimum, be in writing and signed by the grantor. *Vinson v. Brown*, 80 S.W.3d 221, 226 (Tex. App.—Austin 2002, no pet.). At the temporary injunction hearing, the Association admitted that it is "not currently in possession to [sic] any deed that expressly gives or receives an easement with Smith Cemetery Association being the grantor or grantee." Instead, the Association relied on warranty exceptions contained in the deeds prepared in connection with the two most recent conveyances of the Pewitt Ranch. The first of the two deeds, which conveyed the property from Sawtooth Enterprises, Ltd. to SK & DS Partners, L.P. includes the following warranty exception:

5

• Access easement to "Smith" Cemetery as shown on plat of survey dated July 28, 2004, prepared by Lynn R. Savory, Registered Professional Land Surveyor No. 4598.[2]

The second of the two deeds, which conveyed the property from SK & DS Partners, L.P. to Robert Pewitt includes the following warranty exceptions:

• Rights of third parties, if any, in and to that certain Access easement to Smith Cemetery as shown on survey dated January 19, 2005, prepared by Jerry M. Goodson, R.P.L.S. No. 1960.[3]

• Visible and apparent easements on or across the property, evidence of which does not appear of record.

The referenced warranty exceptions do not purport to convey to the Association by express grant an easement over the Pewitt Ranch. *See DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999) (scope of easement created by express grant determined by terms of grant itself). These warranty exceptions do not themselves operate to grant the Association an express easement over the Pewitt Ranch. *See Angell v. Bailey*, 225 S.W.3d 834, 840 (Tex. App.—El Paso 2007, no pet.) (strangers to deed have no right to establish title by recitals in such deed). The Association adduced no evidence at the hearing that could support a finding that it has an express easement over the Pewitt Ranch. It did not, therefore, demonstrate a probable right to recover on its claims for interference with an express easement, nor did it establish a probable right to a declaration that it holds such an easement.

---

[2] A copy of the survey was admitted into evidence and indicates that the "access easement" follows the Pewitt Ranch Road.

[3] A copy of this survey was not admitted into evidence at the temporary injunction hearing.

6

***Easement by Implication***

We next consider whether there is evidence that would reasonably support the conclusion that the Association has an implied easement over the Pewitt Ranch. The elements of an easement by implication are: (1) unity of ownership between the dominant and servient estates; (2) apparent use of the easement at the time the dominant estate was granted; (3) continuous use of the easement, so that the parties must have intended its use to pass by grant with the dominant estate; and (4) reasonable necessity of the easement to the use and enjoyment of the dominant estate. *Vinson*, 80 S.W.3d at 228-29 (citing *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966)). Whether these requirements have been met is to be determined as of the time the dominant and servient estates were severed. *Id.* (citing *Holden v. Weidenfeller*, 929 S.W.2d 124, 129 (Tex. App.—San Antonio 1996, writ denied)). We have reviewed the testimony of witnesses and the exhibits presented at the hearing on the Association's application for a temporary injunction and have found no evidence in either the testimony or the exhibits that the alleged dominant estate (the Smith Cemetery) and the alleged servient estate (the Pewitt Ranch) were ever owned by the same person or entity. Thus, there is no evidence of one of the required elements of an easement by implication. In the absence of any evidence of unity of ownership of the dominant and servient estates, a finding that the Association has an implied easement over the Pewitt Ranch is unsupported. The Association did not, therefore, demonstrate a probable right to recover on its claims for interference with an implied easement, nor did it demonstrate its probable right to a declaration that it holds such an easement.

### Easement by Necessity

When a grantor conveys part of a tract of land while retaining the remaining acreage for himself, an implied reservation of a right of way by necessity over the land conveyed arises if and when no other access exists. *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984) (citing *Bains v. Parker*, 182 S.W.2d 397 (1944)). The elements needed to establish an implied easement by necessity are: (1) unity of ownership prior to separation; (2) access must be a necessity and not a mere convenience; and (3) the necessity must exist at the time of the severance of the two estates. *Id.* (citing *Duff v. Matthews*, 311 S.W.2d 637 (1958)). To establish the required unity of ownership, the claimant must prove that prior to severance his grantor owned both the dominant and the servient estate as a single unit. *Id.* As we have previously stated, there was no evidence presented at the hearing on the Association's application for temporary injunction that the Smith Cemetery land and the Pewitt Ranch were, prior to severance, owned as a single unit. In the absence of any evidence of unity of ownership of the dominant and servient estates, a finding that the Association has an easement by necessity over the Pewitt Ranch is not supported. The Association did not, therefore, demonstrate a probable right to recover on its claim for interference with an easement by necessity, nor did it demonstrate its probable right to a declaration that it holds such an easement.

### Easement by Estoppel

The owner of land, under some circumstances, may be estopped to deny the existence of an easement if he makes representations that have been acted on by a purchaser to his detriment. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1963). The elements needed to establish an easement by estoppel are (1) a representation communicated to a promisee;

(2) the communication is believed; and (3) reliance on the communication. *Scott v. Cannon*, 959 S.W.2d 712, 720 (Tex. App.—Austin 1998, pet. denied) (citing *Lakeside Launches v. Austin Yacht Club*, 750 S.W.2d 868, 872 (Tex. App.—Austin 1988, writ denied)). In addition, this Court has held that a vendor/vendee relationship must exist between the party making the representation and the party claiming to have relied on it. *Id.* ("[W]e believe after reviewing the cases, that the law requires a vendor/vendee relationship to establish an easement by estoppel."). There was no evidence presented at the hearing on the application for temporary injunction tending to show the existence of a vendor/vendee relationship between Pewitt and the Association. Nor was there any evidence that anyone with whom the Association had a vendor/vendee relationship made any representations to the Association that they relied on to their detriment regarding use of the road. Moreover, while there was evidence that Pewitt permitted the Association to use the roadway to access the cemetery for a certain period of time, such passive acquiescence cannot rise to the level of a "representation" so as to create an easement by estoppel when there is no evidence of any unity of title between the Pewitt Ranch and the cemetery. *See Stallman v. Newman*, 9 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Scott*, 959 S.W.2d at 721 (acquiescence for no matter how long does not estop landowner from denying existence of easement across his land). The evidence presented at the temporary injunction hearing does not support a finding that the Association has an easement by estoppel over the Pewitt Ranch. The Association did not, therefore, demonstrate a probable right to recover on its claims for interference with an easement by estoppel, nor did it demonstrate its probable right to a declaration that it holds such an easement.

9

Having concluded that the Association failed to present evidence establishing a probable right to the relief sought, we need not address Pewitt's assertions that the Association also failed to establish that it has no adequate remedy at law and that it would suffer a probable, imminent, and irreparable injury if it were not able to use the Pewitt Ranch Road to access the cemetery during the pendency of this litigation.

## CONCLUSION

The trial court's conclusion that the Association had a probable right to prevail on "one or more" of the pleaded theories of easement alleged in their petition is not reasonably supported by the evidence presented at the hearing on the Association's application for temporary injunction. We hold, therefore, that the trial court abused its discretion in issuing the injunction. Consequently, we reverse the trial court's order, dissolve the temporary injunction, and remand the cause to the trial court for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded

Filed:   September 13, 2012

10